A. D. ZACHERY, *et al.*, Appellants, v. J. W. DUTTON, *et al*, Appellees.

Opinion Filed March 2, 1915.

Where a sale of land is made subsequent to a duly executed and recorded lease of the lands and others for turpentine purposes, and in such lease it is expressly stipulated that of the lands *covered by the lease,* 2,000 acres shall be released annually, the purchasers of the land cannot require the lessee to release annually 2,000 acres of the lands that are included in the conveyance to them when the terms of the prior lease have reference to a greater acreage included in the lease.

Appeal from Circuit Court for Lake County; W. S. Bullock, Judge.

Decree affirmed.

*Wilson & Householder* and *A. K. Powers,* for Appellants.

*Jones & Jones,* for Appellees.

WHITFIELD, J.—This appeal is from a final decree mak-

ing permanent an injunction previously granted to prohibit the appellants from cutting timber on lands covered by a turpentine lease held by the appellees.

It appears that on December 13, 1906, D. G. Crenshaw, the owner of the lands, joined by his wife, conveyed to Dutton & Hagan "all the timber upon * described tracts of land for the purpose of boxing, working and otherwise using said timber for turpentine purposes only"; that such turpentine lease was duly recorded and contained the following provision: "It is expressly covenanted and agreed by the said parties of the second part that they will accept and use said timber for turpentine purposes subject to all the terms, covenants and conditions of a certain deed conveying the land and timber, made by D. G. Crenshaw and wife, Margaret E. Crenshaw, to William T. Cotter and Mary A. Cotter, dated December 3rd, 1906, and conveying the above described lands and leases; it being provided among other things in said deed that the parties of the first part thereto, their heirs and assigns shall release unto the said William T. Cotter and Mary A. Cotter, their heirs and assigns, not less than two thousand (2000) acres per year for mill purposes, beginning January 1st, 1907, and two thousand (2000) acres each year thereafter on the first day of January, and this lease is expressly made subject to the above described instrument and is hereby accepted by the said parties of the second part as a part of this conveyance, and they agree and covenant to carry out and perform all of the said covenants and conditions therein set forth. And it is further covenanted and agreed that the said parties of the second part may have the right at any time to assign this lease in whole or in part subject to the above covenants and conditions, and that the assignee of this

lease shall have the right to assign the same subject to the same covenants and conditions. This lease shall exist for the term that the timber may be worked after releasing two thousand (2000) acres per year, it being the intention of the parties of the first part to lease unto the said parties of the second part the said timber to be worked for turpentine purposes upon the basis set forth in the deed from the parties of the first part to William T. Cotter and Mary A. Cotter, to-wit: that they shall release two thousand (2000) acres per year and shall have the right to work the remaining timber for another year and at the end of the next year to release another two thousand acres and so on until all of the timber has been released at the rate above mentioned;" that a deed conveying the land and timber to W. T. Cotter on December 3rd, 1906, was not made effective and was abandoned; that D. G. Crenshaw died, and on March 27, 1909, his representatives contracted to convey to Zachary a large part of the lands contained in the turpentine lease to Dutton & Hagan, and Zachary took possession under the contract to convey.

Under the turpentine lease Dutton & Hagan agreed to release 2000 acres annually; and as the Dutton & Hagan lease contained lands not included in the contract of sale made with Zachary, the latter claims that the lands to be released annually should be not of the total of those included in the Dutton & Hagan lease, but should be of those lands contained in the abandoned and not completed conveyance to Cotter, such lands being the same as those included in the contract to convey made with Zachary.

The conveyance to Cotter failed of execution, was aban-

doned and is as though never attempted, therefore the lands remained Crenshaw's. The lease made to Dutton & Hagan was made "subject to all the terms, covenants and conditions of a certain deed conveying the land and timber, made by D. G. Crenshaw and wife, Margaret E. Crenshaw, to William T. Cotter and Mary A. Cotter, dated December 3rd, 1906, conveying the above described lands and leases." One of the said conditions being that Crenshaw release to Cotter and wife "not less than two thousand (2000) acres per year for mill purposes." The parties to the Dutton & Hagan lease expressly agreed to carry out all the conditions contained in the deed to Cotter and wife. But as this proposed conveyance to Cotter was abandoned, Zachary's rights were subject to the Dutton & Hagan lease, and the lease to Dutton & Hagan in effect stipulated that *of the lands covered by such lease* 2000 acres were to be released annually. This would be "upon the basis set forth in the deed  *  to William T. Cotter and Mary A. Cotter," as stipulated in the lease to Dutton & Hagan. The fact that the abandoned deed to Cotter contained less acreage than was contained in the Dutton & Hagan lease does not require Dutton & Hagan to release first lands that are listed in the abandoned Cotter deed, so as to comply with a demand of Zachary under a contract for the conveyance of the lands contained in the abandoned Cotter deed, which contract with Zachary was made long after the execution and record of the Dutton & Hagan lease. This must be so even if the deed in evidence made to W. T. Cotter alone is the deed referred to in the Dutton & Hagan lease, and even if Crenshaw did not in fact own some of the lands leased to

Dutton & Hagan, and used by them for turpentine purposes.

**Decree affirmed.**

TAYLOR, C. J., AND SHACKLEFORD, COCKRELL AND ELLIS, J. J., concur.